**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| APRIL M. BOWMAN, ) | |
| ) | No. 3:12-cv-03589-DCN |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| CAROLYN W. COLVIN, *Acting* ) | |
| *Commissioner of Social Security*,[1] ) | |
| ) | |
| Defendant. ) | |
| ) | |

This matter is before the court on Magistrate Judge Joseph R. McCrorey's Report and Recommendation ("R&R") that this court affirm Acting Commissioner of Social Security Carolyn Colvin's decision denying plaintiff's application for disability insurance benefits ("DIB"). The plaintiff filed objections to the R&R. For the reasons set forth below, the court adopts in part and rejects in part the R&R, reverses the Commissioner's decision, and remands for further administrative proceedings.

## I.  BACKGROUND

Unless otherwise noted, the following background is drawn from the R&R.

### A.     Procedural History

Plaintiff April M. Bowman ("Bowman") filed an application for DIB on August 5, 2009, alleging disability beginning on November 1, 2004.[2] The Social Security Agency ("the Agency") denied Bowman's claim initially and on reconsideration.

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin should be substituted for Michael J. Astrue as the defendant in this lawsuit.

[2] Bowman initially indicated an alleged onset date of August 14, 2004, but subsequently amended her alleged onset date at the hearing. Tr. 54.

1

Bowman requested a hearing before an administrative law judge ("ALJ"), and ALJ Edward T. Morriss held a hearing on February 3, 2011. The ALJ issued a decision on February 25, 2011, finding Bowman not disabled under the Social Security Act. Bowman requested Appeals Council review of the ALJ's decision. The Appeals Council declined to review the decision, rendering the ALJ's decision the final action of the Commissioner.

On December 20, 2012, Bowman filed this action seeking review of the ALJ's decision. The magistrate judge issued an R&R on November 5, 2013, recommending that this court affirm the ALJ's decision. Bowman filed objections to the R&R on December 19, 2013. The Commissioner filed a reply on January 3, 2014. The matter has been fully briefed and is ripe for the court's review.

### B. Medical History

Because Bowman's medical history is not directly at issue here, the court dispenses with a lengthy recitation thereof and instead notes a few relevant facts. Bowman was born on May 28, 1971 and was thirty-three years old on the alleged onset date. She completed one year of post-secondary education and has past relevant work experience as a restaurant server.

### D. ALJ's Decision

The ALJ employed the statutorily-required five-step sequential evaluation process to determine whether Bowman was disabled from November 1, 2004 through December 31, 2009 (her date last insured). The ALJ first determined that Bowman did not engage in substantial gainful activity during the period at issue. Tr. 38. At the second step, the ALJ found that Bowman suffered from the following severe impairment: degenerative

disc disease.  Id.  At step three, the ALJ determined that Bowman's impairments or combination of impairments did not meet or equal one of the listed impairments in the Agency's Listing of Impairments.  Tr. 39; see 20 C.F.R. Part 404, Subpt. P, App'x 1.  Before reaching the fourth step, the ALJ determined that Bowman had the residual functional capacity ("RFC") to perform light work, as defined by 20 C.F.R. § 404.1567(b), with some additional limitations.  Tr. 40.  Specifically, the ALJ found that Bowman could lift and carry up to twenty pounds occasionally and ten pounds frequently; stand, walk, and sit for six hours each in an eight-hour work day; occasionally stoop; occasionally climb ramps and stairs; and never climb ladders.  Id.  The ALJ further determined that pain would limit Bowman to performing simple, routine, repetitive tasks consistent with unskilled work.  Id.  The ALJ found, at step four, that Bowman was unable to perform her past relevant work.  Tr. 44.  Finally, at step five, the ALJ determined that considering Bowman's age, education, work experience, and RFC, she could perform jobs existing in significant numbers in the national economy, and therefore concluded that she was not disabled during the period at issue.  Tr. 44-45.

## II.  STANDARD OF REVIEW

This court is charged with conducting a de novo review of any portion of the magistrate judge's R&R to which specific, written objections are made.  28 U.S.C. § 636(b)(1).  A party's failure to object is accepted as agreement with the conclusions of the magistrate judge.  See Thomas v. Arn, 474 U.S. 140, 149-50 (1985).  The recommendation of the magistrate judge carries no presumptive weight, and the responsibility to make a final determination rests with this court.  Mathews v. Weber, 423 U.S. 261, 270-71 (1976).

Judicial review of the Commissioner's final decision regarding disability benefits "is limited to determining whether the findings of the [Commissioner] are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "more than a mere scintilla of evidence but may be somewhat less than a preponderance." Id. (internal citations omitted). "[I]t is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the [Commissioner] if his decision is supported by substantial evidence." Id. Where conflicting evidence "allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [ALJ]," not on the reviewing court. Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citation omitted).

## III.   DISCUSSION

Bowman objects to the R&R on four grounds:  (1) the magistrate judge erred in finding that the ALJ properly discounted the opinion of Bowman's treating physician, Dr. Mark Netherton; (2) the magistrate judge erred in finding that the ALJ properly determined that Bowman could perform light work; (3) the magistrate judge erred in finding that the ALJ's reliance on the medical-vocational guidelines without testimony of a vocational expert was proper; and (4) the magistrate judge erred in finding that the ALJ gave proper weight to the treatment notes of Dr. Charles H. Hughes and the opinion of Dr. Temisan L. Etikerentse; and (5) the magistrate judge erred in finding that the Appeals Council had properly considered new evidence that Bowman submitted.

The court will consider each of Bowman's objections in turn.

### A. Treating Physician Rule

Bowman's first objection to the R&R is that the magistrate judge improperly found no error in the ALJ assigning little weight to the opinion of Dr. Netherton, her treating physician. Pl.'s Objections 1. Bowman argues that her medical records support Dr. Netherton's opinion. Id. at 2.

Regulations require that a treating physician's opinion be given controlling weight if that opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2); see, e.g., Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). "By negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig, 76 F.3d at 590. In such a circumstance, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro, 270 F.3d at 178.

If a treating physician's opinion does not merit controlling weight, the ALJ is to evaluate it using the following factors: (1) whether the physician has examined the applicant; (2) the nature and extent of the treatment relationship; (3) the extent to which the opinion is supported by relevant medical evidence; (4) the extent to which the opinion is consistent with the record as a whole; (5) the relevance of the physician's medical specialization to the opinion; and (6) any other factor that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(c); see SSR 96–2p; Hines v. Barnhart, 453 F.3d 559, 563 (4th Cir. 2006). However, the Fourth Circuit has not mandated an express discussion of each factor and another court in this district has held that "an express discussion of

5

each factor is not required as long as the ALJ demonstrates that he applied the . . . factors and provides good reasons for his decision." Hendrix v. Astrue, No. 1:09-cv-1283, 2010 WL 3448624, at *3 (D.S.C. Sept. 1, 2010); see § 404.1527(c)(2) (requiring ALJ to give "good reasons" for weight given to treating source's opinion). A district court will not disturb an ALJ's determination as to the weight to be assigned to a medical opinion, including the opinion of a treating physician, "absent some indication that the ALJ has dredged up 'specious inconsistencies' . . . or has not given good reason for the weight afforded a particular opinion." Craft v. Apfel, 164 F.3d 624, 1998 WL 702296, at *2 (4th Cir. 1998) (per curiam) (unpublished table decision) (internal citation omitted).

In an October 2010 opinion, Bowman's treating physician, Dr. Netherton, opined that Bowman could sit for less than two hours total in an eight-hour work day and stand or walk for less than two hours total in an eight-hour work day; rarely lift or carry less than ten pounds and never more than ten pounds; and rarely stoop, bend, or climb stairs. Tr. 382-83. Dr. Netherton further opined that Bowman would need to shift positions at will and would need to take unscheduled breaks every hour. Id. The ALJ afforded Dr. Netherton's opinion "little weight."[3] Tr. 44. In doing so, the ALJ determined that the other evidence of record and Dr. Netherton's own treatment notes did not support his findings. Id.

In her objections, Bowman simply lists "medical records in [her] file that support Dr. Netherton's RFC." Pl.'s Objections 2-3. As noted by the magistrate judge, the ALJ's decision contains extensive discussion of clinical findings and treatment records which

---

[3] The ALJ did give "some weight" to the portion of Dr. Netherton's opinion indicating that pain constantly interferes with Bowman's attention and concentration. Tr. 44.

the ALJ determined to be "inconsistent with a finding that degenerative disc disease has imposed disabling limitations." Tr. 41-43. Inconsistency with other substantial evidence is an appropriate reason to give a medical opinion less weight. Craig, 76 F.3d at 590. Bowman's objection is essentially an invitation to the court to reweigh the evidence and come to its own conclusion. Such reweighing of the evidence is not within the province of this court. See Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (holding that a reviewing court should not undertake to reweigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the ALJ).

The ALJ was not required to give Dr. Netherton's opinion controlling weight because it was inconsistent with other substantial evidence. See Tr. 41-43. Moreover, there is no indication that the ALJ dredged up specious inconsistencies in discounting Dr. Netherton's opinion. The court declines to reweigh the evidence and instead finds that the ALJ's weighing of Dr. Netherton's opinion is supported by substantial evidence.

Bowman's first objection fails.

### B.     RFC Determination & Past Relevant Work

Bowman objects to the ALJ's finding that she could work at the light level. Pl.'s Objections 3. Bowman does not allege any error of law or argue that the ALJ's RFC determination is not supported by substantial evidence. The only argument that Bowman advances is that because the ALJ found that she could not perform her past work as a waitress, which the Dictionary of Occupational Titles considers light work, she therefore cannot perform any other job at the light level. Id.

Bowman has not objected to any specific portion of the ALJ's RFC determination, and the court therefore finds that the ALJ's RFC determination is

supported by substantial evidence. Because the case is being remanded for other reasons, on remand the ALJ and vocational expert should clarify whether Bowman's inability to perform her past relevant work means that she cannot perform <u>any</u> light work.

### C.     Medical-Vocational Guidelines

Bowman's next objection is that the magistrate judge erred by finding that the ALJ properly relied on the medical-vocation guidelines ("grids") at step five in determining that Bowman could perform work jobs existing in significant numbers in the national economy. Pl.'s Objections 3-4. Bowman asserts that the ALJ's step five analysis required testimony from a vocational expert. <u>Id.</u> at 4.

At step five of the sequential evaluation, the Commissioner bears the burden of providing evidence of a significant number of jobs in the national economy that a claimant could perform. <u>Walls v. Barnhart</u>, 296 F.3d 287, 290 (4th Cir. 2002). To improve both the uniformity and efficiency of this determination, the Commissioner promulgated the grids, located at 20 C.F.R. Part 404, Subpart P, App'x 2. <u>Heckler v. Campbell</u>, 461 U.S. 458, 461 (1983). The grids consist of three tables, each representing a different residual functional capacity, including sedentary (table 1), light (table 2), and medium work (table 3). 20 C.F.R. Part 404, Subpt. P, App'x 2. Each table consists of a matrix of the four factors identified by Congress – physical ability, age, education, and work experience – and sets forth rules that identify whether jobs requiring specific combinations of these factors exist in significant numbers in the national economy. <u>Heckler</u>, 461 U.S. at 461-62. Where a claimant's qualifications correspond to the job requirements identified by a rule, the grids direct a conclusion as to whether work exists

that the claimant could perform. Id. at 462. If such work exists, the claimant is not considered disabled. Id.

> Each grid, however,
>
> considers only the strength or exertional component of a claimant's disability in determining whether jobs exist that the claimant is able to perform in spite of his disability. Thus, in cases where pain occurs only upon exertion and limits one's strength functioning, the grid tables will apply. But when a claimant suffers from both exertional and nonexertional limitations, the grid tables are not conclusive but may only serve as guidelines.

Walker v. Bowen, 889 F.2d 47, 49 (4th Cir. 1989). "[N]ot every nonexertional limitation or malady rises to the level of a nonexertional impairment,[4] so as to preclude reliance on the grids," and "[t]he proper inquiry . . . is whether the nonexertional condition affects an individual's [RFC] to perform work of which he is exertionally capable." Id. When the Commissioner is unable to rely on the grids, she must prove through additional evidence, such as testimony of a vocational expert, that jobs exist in the national economy which the claimant can perform. Id. at 50.

The Agency issued Social Security Ruling 83-14 to "clarif[y] the distinction between exertional and nonexertional limitations and explain[] how the latter affect performance of work activities." SSR 83-14, 1983 WL 31254 (Jan. 1, 1983). The ruling notes that "[a]fter it has been decided that an impaired person can meet the primary strength requirements of sedentary, light, or medium work – sitting, standing, walking,

---

[4] A nonexertional impairment is "a limitation that is present whether the claimant is attempting to perform the physical requirements of the job or not . . . ." Gory v. Schweiker, 712 F.2d 929, 930 (4th Cir. 1983). Such limitations are present at all times in a claimant's life, whether during exertion or rest. Id. Exertional limitations, on the other hand, exist "[w]hen the limitations and restrictions imposed by [the claimant's] impairment(s) and related symptoms, such as pain, affect only [her] ability to meet the strength demands of the jobs (sitting, standing, walking, lifting, carrying, pushing, and pulling)." 20 C.F.R. § 404.1569a(b).

9

lifting, carrying, pushing, and pulling – a further decision may be required as to how much of this potential occupational base remains, considering certain nonexertional limitations which the person may also have." Id.  The ruling acknowledges that certain nonexertional limitations – such as an allergy to ragweed pollen – may have very little effect on the range of work remaining that an individual can perform. Id.  However, the ruling explains that other nonexertional limitations – such as a visual impairment that causes a person to be a hazard to self and others – can substantially reduce the range of work that a claimant can perform. Id.  For those cases in between the examples described, the ruling states that "a decisionmaker will often require the assistance of a [vocational expert]" to determine whether or not the additional nonexertional limitation precludes the claimant from performing a significant number of jobs in the occupational base. Id.

Bowman asserts that she is suffers from pain, which is a significant nonexertional limitation.  Pl.'s Objections 4.  The ALJ acknowledged in his RFC determination that difficulty concentrating due to pain would limit Bowman to performing simple, routine, repetitive tasks consistent with unskilled work.  Tr. 40, 44.  Thus, the sole issue before the court on this objection is whether Bowman's pain erodes the number of light work jobs available to her such that testimony of a vocational expert was required at step five.

When faced with a nearly identical inquiry, another court in this district held that "a concentration deficiency caused by pain . . . falls in between the examples cited in SSR 83-14, thus requiring the assistance of a vocational expert." Sherby v. Astrue, No. 2:09-cv-1061-PMD, 767 F. Supp. 2d 592, 598 (D.S.C. 2010) (noting that although it is not clear that a concentration deficiency would erode the exertional job base like a visual

impairment would, such an impairment could erode more unskilled, light jobs than an impairment created by an allergy). That court held that "because some degree of concentration is required for every job, including unskilled jobs, . . . it is [not] clear that Claimant's nonexertional limitation has very little effect on the entire occupational base for unskilled, light work . . . ." Id. It found that the ALJ's restriction prohibiting the claimant from performing skilled work, similar to the ALJ's limitation here, did not adequately prove that the Commissioner met his burden of establishing that the claimant's concentration deficiency had little or no effect on the occupational base of unskilled, light work. Id. at 599. The Sherby court remanded the case so the ALJ could obtain the testimony of a vocational expert in determining whether or not the claimant could perform a significant number of jobs in the national economy despite concentration deficiencies caused by pain. Id. at 596.

     This court agrees with the reasoning and result of Sherby. Here, the ALJ cited no evidence and did not explain why Bowman's nonexertional impairment does not necessarily and perhaps significantly erode the number of unskilled jobs she could perform, and instead relied on the grids in finding that she could perform work existing in significant numbers in the national economy. Tr. 44-45. Given that concentration is a necessary element of any job, it is possible that Bowman's nonexertional limitation could directly affect her ability to perform many of the jobs in the unskilled, light work occupational base. That determination will need to be made by the ALJ on remand with the assistance of a vocational expert.

Based on the above, the court sustains Bowman's objection, rejects the magistrate judge's R&R as it relates to ALJ's use of the grids at step five, and remands the case for further administrative proceedings.

### D.      Treatment Note of Dr. Hughes & Opinion of Dr. Etikerentse

Bowman next objects to the magistrate judge's "findings of Dr. Hughes in which Dr. Hughes released the Plaintiff to work with light duty restrictions." Pl.'s Objections 4. Bowman appears to be arguing that Dr. Hughes's opinion should be discounted in some way because he opined that no surgery would be needed, but Bowman did, in fact, later need surgery. Id. The magistrate judge accurately cited Dr. Hughes's treatment note in which he stated that Bowman was "released back to work with light duty restrictions" and "no surgery is indicated at this time." Tr. 219 (emphasis added). Regardless, as discussed above, it is not the province of this court to reweigh evidence. See Johnson, 434 F.3d at 653. The court can find no error in the treatment of Dr. Hughes's treatment by either the magistrate judge or ALJ.

Bowman also briefly refers to a consulting exam performed by Dr. Etikerentse. Pl.'s Objections 5. Although she does not articulate a specific objection, she notes that the Dr. Etikerentse's findings are important because they corroborate the Dr. Netherton's opinion. Id. The ALJ considered Dr. Etikerentse's opinion, and gave it great weight to the extent it opined that Bowman could not work as a waitress. Tr. 43. The ALJ determined, however, that she could perform work consistent with her assigned RFC. Tr. 43-44. Once again, the court declines to reweigh the evidence, and can find no error in the treatment of Dr. Etikerentse's opinion by the magistrate judge or ALJ.

Bowman's fourth objection fails.

### E. Appeals Council Review

Finally, Bowman objects to the magistrate judge's conclusion that the Appeals Council properly considered the new evidence that Bowman submitted. Pl.'s Objections 5. Bowman argues that the Appeals Council erred by not making findings regarding the new records she submitted. Id.

The Fourth Circuit has held while the Appeals Council must, in certain circumstances, consider new and material evidence, Wilkins v. Sec'y, Dep't of Health & Human Servs., 953 F.2d 93. 94 (4th Cir. 1991), "nothing in the Social Security Act or regulations promulgated pursuant to it requires that the Appeals Council explain its rationale for denying review." Meyer v. Astrue, 662 F.3d 700, 705 (4th Cir. 2011). The Appeals Council in this case considered the additional evidence provided by Bowman and determined that it did not provide a basis for changing the ALJ's decision. Tr. 2. The Appeals Council was under no obligation to make further findings regarding the new evidence, as Bowman contends.

Bowman's fifth objection fails.

### IV.  CONCLUSION

Based on the foregoing, the court **ADOPTS** the magistrate judge's R&R in part and **REJECTS** the R&R in part, **REVERSES** the Commissioner's decision, and **REMANDS** under sentence four of 42 U.S.C. §405(g) for further proceedings. The only issues on remand are whether Bowman's inability to perform past relevant work prevents her from performing any light work and whether, at step five, there were jobs that existed in significant numbers in the national economy that Bowman could have performed. As

discussed above, the testimony of a vocational expert will be required when making this determination.

  **AND IT IS SO ORDERED**.

                _____
                **DAVID C. NORTON**
                **UNITED STATES DISTRICT JUDGE**

**March 21, 2014**
**Charleston, South Carolina**